**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| AMIN LALANI, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:26-cv-05217 |
| | § | |
| v. | § | |
| | § | |
| CHINA PAK INVESTMENT LIMITED (a/k/a CPIC GLOBAL); CHINA PAK INVESTMENT UK MARKETING LIMITED (a/k/a CPIC UK MARKETING LTD); ONE HILLS TWO SMC (PRIVATE) LIMITED; ONE HOME INVESTMENTS L.L.C.; ONE HOMES US MARKETING INC.; ONE HOMES UK MARKETING LIMITED; ONE INVESTMENTS GLOBAL LIMITED; ONE GROUP; ALEXIS MARKETING INC. d/b/a CPIC US MARKETING INC.; ZEESHAAN SHAH (a/k/a SYED ZEESHAAN UL-HASSAN); HAMEED REHMATULLAH; RAADUL AHED; SHAAN-E ABBAS; and SYED SAJJAD HAIDER, | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Amin Lalani ("Plaintiff" or "Mr. Lalani") files this Original Complaint against the Defendants named above and, in support thereof, respectfully alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action arising out of a coordinated, cross-border investment-fraud scheme through which the Defendants — an interlocking group of United Kingdom, United Arab Emirates, Pakistani, and Texas entities operating under the "CPIC Global," "One Homes," and "One Group" brands, together with the individuals who own and control them — solicited and

extracted approximately $191,413 from Mr. Lalani, a Texas consumer, between February 2022 and November 2023 through a series of Gwadar, Pakistan real-estate "reservations," an Islamabad "Expression of Interest," and a managed-apartment "Amaya Residences" investment.

2. Defendants solicited Mr. Lalani at his Texas home by email, WhatsApp, and telephone; transmitted DocuSign envelopes to him in Texas for execution; accepted payment from his Texas-issued credit cards; and routed every dollar he paid — regardless of which contract or account the paperwork designated — to a single United Kingdom merchant account held by Defendant China Pak Investment UK Marketing Limited through the payment processor Trust Payments Ltd. (t/a SecureTrading). Not one dollar reached any contract-designated account.

3. When Mr. Lalani demanded a refund, Defendants withheld access to his own customer portal as leverage, switched their receiving bank accounts, presented an unsigned "Sales Agreement" laden with a Dubai arbitration clause and a foreign choice-of-law clause that had never appeared in the operative reservation documents, and — after a mediation collapsed — restructured the ownership of one of the enterprise entities by transferring 100% of its shares to an insider.

4. Plaintiff brings claims under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, the civil RICO statute, the Texas Securities Act, the Texas Deceptive Trade Practices–Consumer Protection Act, and Texas common law, and seeks rescission and restitution of his payments, actual and statutory damages, treble and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

## II. PARTIES

### <u>A. Plaintiff</u>

5. Plaintiff **Amin Lalani** is an individual and a citizen of the State of Texas, residing in Sugar Land, Fort Bend County, Texas. Mr. Lalani is a retired consumer investor. Every solicitation at issue was received by him in Texas, and every payment he made was tendered from Texas.

**B. Entity Defendants**

6. Defendant **China Pak Investment Limited** (a/k/a "CPIC Global") ("CPIL") is a free-zone company organized under the laws of the United Arab Emirates, with an address of record at RAK Business Center 1, RAK Freezone, Ras Al Khaimah, United Arab Emirates. CPIL is the original developer/seller of the Gwadar "China Pak Golf Estates" project.

7. Defendant **China Pak Investment UK Marketing Limited** (a/k/a "CPIC UK Marketing Ltd") ("CPIUK") is a private company limited by shares organized under the laws of the United Kingdom (UK Companies House No. 10981441). CPIUK was the merchant-of-record that received Plaintiff's credit-card payments through Trust Payments Ltd.

8. Defendant **One Hills Two SMC (Private) Limited** is a single-member private limited company organized under the laws of Pakistan, with a registered office at 24-D, 4th Floor, Rasheed Plaza, Blue Area, Jinnah Avenue, Islamabad, Pakistan. It is named as "Developer" in the Amaya Residences documentation.

9. Defendant **One Home Investments L.L.C.** is a limited liability company organized under the laws of the United Arab Emirates, with an office at Office 1602, U-Bora Towers, Business Bay, Dubai, United Arab Emirates. It is named as "Sponsor" in the Amaya Residences documentation. Its records reflect conflicting registration/license numbers (Reg. No. 1864249 and Commercial License No. 1129152).

10. Defendant **One Homes US Marketing Inc.** is a corporation doing business in the United States, with an operational office at Suite 1620, 2 Riverway Drive, Houston, Texas 77056. It served as the United States marketing arm of the enterprise.

11. Defendant **One Homes UK Marketing Limited** is a private company limited by shares organized under the laws of the United Kingdom (UK Companies House No. 14105564). On or about August 11, 2025, 100% of its shares were transferred from Defendant Shaan-E Abbas to Defendant Syed Sajjad Haider.

12. Defendant **One Investments Global Limited** is a private company limited by shares organized under the laws of the United Kingdom (UK Companies House No. 08487556), beneficially owned and controlled by Defendant Zeeshaan Shah (a/k/a Syed Zeeshaan Ul-Hassan).

13. Defendant **One Group** is a trade name and unincorporated association used by the enterprise on its corporate-profile and marketing materials and by Defendant Zeeshaan Shah in his self-styled "Founder/Chairman" capacity. Plaintiff sues One Group as an unincorporated association, with leave to amend to name the specific registered entity upon discovery.

14. Defendant **Alexis Marketing Inc.**, doing business as **CPIC US Marketing Inc.**, is a Texas corporation (Texas Secretary of State File No. 0803977590), with a registered agent in Fort Bend County, Texas (Bawla & Bawla LLC, 4 Sweetwater Ct, Sugar Land, Texas 77479) and an operational office at 2 Riverway Drive, Houston, Texas 77056. Alexis Marketing is the Texas hub of the enterprise.

**C. Individual Defendants**

15. Defendant **Zeeshaan Shah** (a/k/a Syed Zeeshaan Ul-Hassan) is an individual believed to reside in the United Kingdom and/or United Arab Emirates. He is the founder, chairman, and

ultimate beneficial owner of the CPIC Global, One Homes, One Group, and affiliated entities, and the principal architect of the scheme.

16. Defendant **Hameed Rehmatullah** is an individual and a citizen of the State of Texas, residing at 19611 Azalea Brook Way, Houston, Harris County, Texas 77084. He held himself out as Senior Vice President of Business Development (USA) / Chief Commercial Officer of One Homes, became Plaintiff's self-described "exclusive agent" effective November 1, 2023, and operated the Amaya solicitation from Harris County.

17. Defendant **Raadul Ahed** is an individual who directs the affairs of Alexis Marketing Inc. from its Texas registered address and maintains offices in Houston, Texas (2 Riverway Drive) and New York. He held himself out as "Sales Director" / "Commercial Director (USA)" of CPIC and One Homes, solicited Plaintiff, transmitted the reservation documents, and personally received a $9,000 check from Plaintiff.

18. Defendant **Shaan-E Abbas** is an individual believed to reside in the United Kingdom. He was a director of One Homes UK Marketing Limited, signed the Amaya Reservation Form, and on or about August 11, 2025 transferred 100% of his One Homes UK Marketing Limited shares to Defendant Syed Sajjad Haider.

19. Defendant **Syed Sajjad Haider** is an individual believed to be a resident of the United States. On or about August 11, 2025, he received the transfer of 100% of the One Homes UK Marketing Limited shares from Defendant Shaan-E Abbas.

20. Upon information and belief, at all material times each Defendant acted as the agent, employee, alter ego, co-conspirator, and/or joint venturer of each other Defendant, and acted within the course and scope of that relationship, such that each Defendant is jointly and severally liable for the acts alleged herein.

## III. JURISDICTION

**A. Federal Question — 28 U.S.C. § 1331**

21. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and 1964(c).

22. Jurisdiction over the Exchange Act claim is exclusive to the federal courts under Section 27 of the Exchange Act, 15 U.S.C. § 78aa. The Amaya Residences investment is an "investment contract," and therefore a "security," under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946): Plaintiff invested money in a common enterprise (a pooled, managed-apartment program) with the expectation of profits to be derived from the efforts of others. The operative Amaya documentation provides for a 90%/10% revenue split administered by the Sponsor and a management company, allocates the unit's revenue among 100,000 pooled "units," contractually prohibits the purchaser from managing or renting the unit, and caps the purchaser's personal use — the classic indicia of an investment contract rather than a purchase of real estate for use.

23. This Court has jurisdiction over the civil RICO claims under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331. Defendants conducted and conspired to conduct the affairs of an association-in-fact enterprise through a pattern of racketeering activity consisting of multiple acts of wire fraud, 18 U.S.C. § 1343, and, upon information and belief, unlawful monetary transactions, 18 U.S.C. § 1957.

**B. Supplemental Jurisdiction — 28 U.S.C. § 1367**

24. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Texas statutory and common-law claims because they arise from the same common nucleus of operative

fact as the federal claims and form part of the same case or controversy. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

**C. Diversity Jurisdiction — 28 U.S.C. § 1332 (Pleaded in the Alternative)**

25. In the alternative and as to the foreign Defendants, jurisdiction is proper under 28 U.S.C. § 1332(a)(2) and (a)(3). The amount in controversy exceeds $75,000, exclusive of interest and costs; Plaintiff's actual damages are approximately $191,413, subject to trebling under RICO and the DTPA and to exemplary damages.

**D. Personal Jurisdiction**

26. This Court has personal jurisdiction over Defendants Hameed Rehmatullah and Alexis Marketing Inc. as Texas citizens, and general jurisdiction over Alexis Marketing Inc. as a Texas corporation.

27. This Court has specific personal jurisdiction over the remaining Defendants under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, consistent with due process, because each Defendant purposefully directed its conduct at Texas and this action arises from that conduct: Defendants solicited a Texas consumer at his Texas home; transmitted contracts and payment links into Texas; accepted payment from Texas-issued cards; directed their sales agents into Texas; and, in the Amaya Reservation Form, designated a Chase Bank account at 5177 Richmond Avenue, Houston, Texas as the sponsor account. *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). These intentional torts were aimed at a Texas plaintiff, with the brunt of the injury felt in Texas. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

28. Independently, this Court may exercise nationwide personal jurisdiction over the RICO and Exchange Act Defendants under 18 U.S.C. § 1965(b) and 15 U.S.C. § 78aa, evaluated against the Fifth Amendment's aggregate-national-contacts test. *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir. 1994).

29. As to any foreign Defendant not subject to general jurisdiction in any single state, this Court may exercise jurisdiction under Fed. R. Civ. P. 4(k)(2), because Plaintiff's claims arise under federal law and the exercise of jurisdiction is consistent with the Constitution and laws of the United States. *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

## IV. VENUE

30. Venue is proper in the Southern District of Texas, Houston Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District: Defendant Hameed Rehmatullah operated from Harris County; the Amaya Reservation Form designated a Houston bank account as the sponsor account; the solicitations and DocuSign envelopes were delivered to Plaintiff in Fort Bend County; and Plaintiff's payment authorizations originated in Texas. Both Harris and Fort Bend Counties lie within the Houston Division. 28 U.S.C. § 124(b)(2).

31. Venue is also proper under the special venue provisions for RICO, 18 U.S.C. § 1965(a), and the Exchange Act, 15 U.S.C. § 78aa, because the enterprise transacted its affairs in this District and acts constituting the violations occurred here. In the alternative, venue lies under 28 U.S.C. § 1391(b)(3).

## V. FACTUAL BACKGROUND

### A. The Gwadar Reservations (2022)

32. Beginning in February 2022, Defendant Raadul Ahed solicited Plaintiff, emailing DocuSign envelopes and payment links directly to Plaintiff's Texas home. Two "Reservation Forms" were generated.

33. The first ("RF1"; DocuSign Envelope 2394357B) purported to reserve nine Gwadar plots for a total of $576,750 and instructed payment in favor of "Chinapak Investments Limited" at Emirates NBD, Dubai. RF1's Clause 8 conditioned any binding effect on "verification and confirmation by the Developer/Seller's Admin Team," but that verification block was left blank; the document therefore never became binding. Nevertheless, approximately $155,300 was collected against RF1. Raadul Ahed signed RF1 as both "Consultant" and "Director."

34. The second ("RF2"; DocuSign Envelope 646662C5) reserved one Gwadar plot (P15), was signed and verified on or about July 13, 2022, and bore "Special Terms & Conditions Approved by the Director." RF2 is a binding written contract.

**B. Diversion of Every Payment to a Single U.K. Account**

35. Every payment Plaintiff made — the amounts charged to his Bank of America and Capital One cards for Gwadar, the $9,000 check to Raadul Ahed, the amounts charged to his Citibank Mastercard for Amaya, and the $5,000 Islamabad "Expression of Interest" — was routed through Trust Payments Ltd. (t/a SecureTrading) to Defendant CPIC UK Marketing Limited, a United Kingdom entity that was not named as the contracting party or the designated payee in any of the operative documents. Plaintiff's own bank transaction alerts independently confirm that the merchant name on each charge was "CPIC UK marketing Ltd." No payment reached any account designated in the contracts.

**C. Portal Denial as Leverage**

36. On or about October 6, 2023, Defendant Raadul Ahed admitted in writing that he had placed Plaintiff's customer portal "on hold" because Plaintiff had "not made any payments since the registration last year." As a result, Plaintiff could not access his own account information, valuations, or documents unless he purchased something further. That leverage was used to steer Plaintiff into the Amaya Residences transaction.

**D. The Amaya Residences Bait-and-Switch**

37. Three successive documents comprise the Amaya record. First, a Reservation Form (DocuSign Envelope 17B49966) for Units 312 and 313 combined, at $217,035.12, was signed by Hameed Rehmatullah on November 7, 2023 but never signed by Plaintiff, and was marked void.

38. Second, an active Reservation Form (DocuSign Envelope DD3B85DA) for Unit 313 only, at $107,042.40, was signed by Plaintiff on November 12, 2023 and by Hameed Rehmatullah and Shaan-E Abbas. Upon information and belief, the same DocuSign envelope contains two versions of the document bearing different text at Term 1 — one naming "One Homes UK Marketing Ltd" as agent, and the other naming "One Homes L.L.C." — despite the same envelope identifier and the same signature dates, which is indicative of post-execution alteration or the concurrent circulation of inconsistent versions.

39. Third, a "Sales Agreement" (DocuSign Envelope BEB9B428) was sent to Plaintiff four times (April 24, June 11, June 24, and July 10, 2024). All three signature blocks — Developer, Sponsor, and Purchaser — were left blank, and no DocuSign "Completed" confirmation was ever generated. The Sales Agreement was never executed. Because the Reservation Form provides that it is to be superseded only by a Sales & Purchase and Unit Management Agreement "once signed & executed by all parties," and because that execution never occurred, the Reservation Form remains the only operative Amaya instrument. The Sales Agreement's terms — including its Dubai

International Arbitration Centre arbitration clause, its U.A.E. choice-of-law clause, its non-refundable clause, and its Pakistani-Rupee payment mechanism — never took effect as to Plaintiff.

**E. The Islamabad "Expression of Interest"**

40. Separately, on or about July 28, 2022, Raadul Ahed solicited a $5,000 "Expression of Interest" (DocuSign Envelope 3561F9AD). By its own terms, the Expression of Interest is "refundable until allocation of unit and/or issuance of 'The Wishlist.'" No unit was ever allocated and no "Wishlist" was ever issued; the document is marked void. The $5,000 is owed by the document's own terms.

**F. The Refund Demand, Mediation Collapse, and Share Transfer**

41. On or about October 6, 2023, Plaintiff made a written demand to withdraw his entire investment. Approximately ten days later, Defendants switched their Gwadar receiving account from Emirates NBD, Dubai to Mashreq Bank, Dubai. In or about May–June 2025, a mediation collapsed after Defendants offered only two Gwadar lots at a claimed value that ignored the Amaya payments and the refundable Islamabad Expression of Interest. Approximately eight weeks later, on or about August 11, 2025, Defendant Shaan-E Abbas transferred his entire ownership interest in One Homes UK Marketing Limited to Defendant Syed Sajjad Haider.

## VI. THE ARBITRATION AND CHOICE-OF-LAW CLAUSES ARE UNENFORCEABLE

42. To the extent any Defendant contends that Plaintiff's claims are subject to arbitration or a foreign choice-of-law provision, those contentions fail. The Amaya Sales Agreement was never signed by any party and thus created no agreement to arbitrate; a party cannot be compelled to arbitrate absent proof of an agreement to do so. 9 U.S.C. § 2; *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010). The operative Amaya Reservation Form contains no arbitration clause.

43. Any challenge to the arbitration clause itself is for this Court, not an arbitrator, to decide. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). The purported Gwadar arbitral forum is objectively unavailable, and the U.A.E. choice-of-law provision is void as contrary to Texas public policy. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678–80 (Tex. 1990).

44. Furthermore, any waiver of Plaintiff's rights under the Texas Deceptive Trade Practices Act is "contrary to public policy and … unenforceable and void." Tex. Bus. & Com. Code § 17.42(a). Plaintiff was not represented by independent counsel (see Tex. Bus. & Com. Code § 17.42(c)), the transactions did not involve total consideration exceeding $500,000 (see id. § 17.49(f)), and Plaintiff is a "consumer" under § 17.45(4).

## VII. CAUSES OF ACTION

### COUNT ONE

### Securities Fraud — Section 10(b) and Rule 10b-5

45. Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

46. The Amaya Residences interest is a "security" within the meaning of 15 U.S.C. § 78c(a)(10) and *Howey*. In connection with the purchase and sale of that security, Defendants Zeeshaan Shah, Hameed Rehmatullah, Raadul Ahed, CPIL, CPIUK, One Homes (and its affiliated entities), One Group, One Home Investments L.L.C., and One Hills Two SMC, directly and indirectly, made untrue statements of material fact and omitted material facts necessary to make their statements not misleading, and engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiff.

47. Defendants acted with scienter; Plaintiff justifiably relied on Defendants' misrepresentations and omissions in connection with the purchase of the security; and Plaintiff suffered economic loss proximately caused by Defendants' conduct (loss causation). The elements of a Section 10(b) claim are satisfied. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Plaintiff pleads these allegations with the particularity required by Fed. R. Civ. P. 9(b) and 15 U.S.C. § 78u-4(b).

**COUNT TWO**

**Texas Securities Act — Tex. Gov't Code ch. 4001–4008**

48. Plaintiff incorporates the preceding paragraphs by reference.

49. The Amaya Residences interest is a "security" that was not registered in Texas, and no exemption applies. Defendants offered and sold, and materially aided the offer and sale of, that unregistered security. Under the Texas Securities Act, a seller of an unregistered security is liable to the buyer under Tex. Gov't Code § 4008.052, and a seller of a security by means of an untrue statement of material fact or a material omission is liable under Tex. Gov't Code § 4008.053; in either case the buyer may recover rescission or damages plus interest, together with attorneys' fees. Defendant Hameed Rehmatullah is individually liable as a "seller," and the remaining Defendants are liable as sellers and as aiders. Plaintiff elects rescission and the return of all consideration paid, with interest, plus attorneys' fees.

**COUNT THREE**

**Civil RICO — 18 U.S.C. §§ 1962(c) & 1962(d)**

50. Plaintiff incorporates the preceding paragraphs by reference.

51. Defendants constituted an association-in-fact "enterprise" within the meaning of 18 U.S.C. § 1961(4), engaged in and affecting interstate and foreign commerce, that functioned as a

continuing unit with the common purpose of soliciting funds from investors and diverting, concealing, and protecting those funds. *Boyle v. United States*, 556 U.S. 938, 946 (2009).

52. Each individual Defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). The pattern consists of multiple, related acts of wire fraud, 18 U.S.C. § 1343 — including the interstate and international emails, payment links, and electronic transmittals used to solicit, collect, and conceal Plaintiff's funds — which are related and pose a threat of continued criminal activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

53. So as to state a pattern distinct from any conduct actionable as securities fraud, Plaintiff predicates the RICO pattern on post-transaction wires that caused an injury separate from the securities-fraud injury — namely, the impairment of Plaintiff's ability to recover his funds — including: (i) the October 2023-onward portal-denial and refund-stonewalling communications; (ii) the inter-entity and cross-border wires effecting concealment and the switching of receiving accounts; and (iii) the communications and transfers culminating in the August 11, 2025 restructuring of One Homes UK Marketing Limited. Plaintiff pleads the RICO conspiracy under 18 U.S.C. § 1962(d). Plaintiff is entitled to threefold his damages, plus attorneys' fees and costs, under 18 U.S.C. § 1964(c).

**COUNT FOUR**

**Texas Deceptive Trade Practices–Consumer Protection Act**

54. Plaintiff incorporates the preceding paragraphs by reference.

55. Plaintiff is a "consumer" under Tex. Bus. & Com. Code § 17.45(4). Defendants engaged in false, misleading, and deceptive acts and practices under Tex. Bus. & Com. Code §

17.46(b), including representing that goods or services had characteristics, uses, benefits, or qualities they did not have (§ 17.46(b)(5)); representing that goods or services were of a particular standard or quality when they were not (§ 17.46(b)(7)); representing that an agreement conferred or involved rights, remedies, or obligations it did not (§ 17.46(b)(12)); and failing to disclose material information concerning goods or services that was known at the time of the transaction, with the intent to induce Plaintiff into a transaction he otherwise would not have entered (§ 17.46(b)(24)).

56. Defendants also engaged in an unconscionable action or course of action under § 17.50(a)(3). Defendants' conduct was a producing cause of Plaintiff's economic damages. Because Defendants' conduct was committed knowingly and intentionally, Plaintiff is entitled to treble damages under § 17.50(b)(1), together with attorneys' fees under § 17.50(d). Plaintiff provided written notice under § 17.505(a), and pleads the § 17.505(c) exception to the extent the sixty-day pre-suit notice period was rendered impracticable by the necessity of filing suit to prevent the expiration of limitations.

**COUNT FIVE**

**Common-Law Fraud and Fraudulent Inducement**

57. Plaintiff incorporates the preceding paragraphs by reference.

58. Defendants made material representations that were false; Defendants knew the representations were false or made them recklessly, as positive assertions, without knowledge of their truth; Defendants made the representations with the intent that Plaintiff act on them; Plaintiff justifiably relied on the representations; and Plaintiff suffered injury as a result. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). These misrepresentations

induced Plaintiff to enter the transactions and to part with his funds. Plaintiff pleads fraud with particularity under Fed. R. Civ. P. 9(b) and seeks actual and exemplary damages.

## COUNT SIX

## Breach of Written Contract

59. Plaintiff incorporates the preceding paragraphs by reference.

60. Valid, enforceable written contracts existed between Plaintiff and the contracting entity Defendants, including RF2 (the signed and verified Gwadar Reservation Form, Envelope 646662C5), the operative Amaya Reservation Form (Envelope DD3B85DA), and the Islamabad Expression of Interest (Envelope 3561F9AD). Plaintiff performed, tendered performance, or was excused. Defendants breached by, among other things, failing to deliver the reserved plots and unit, diverting Plaintiff's payments to an undisclosed account, denying Plaintiff access to his account, and refusing to refund amounts owed. Plaintiff was damaged and seeks his actual damages plus attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001.

## COUNT SEVEN

## Unjust Enrichment / Money Had and Received (Pleaded in the Alternative)

61. Plaintiff incorporates the preceding paragraphs by reference.

62. To the extent any transaction is found not to be governed by an enforceable contract — including the amounts collected under the void RF1 and the amounts paid toward the never-executed Amaya Sales Agreement — Defendants hold money that in equity and good conscience belongs to Plaintiff, and were unjustly enriched at Plaintiff's expense. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Plaintiff is entitled to restitution of every dollar received by Defendants.

## COUNT EIGHT

**Economic Duress**

63. Plaintiff incorporates the preceding paragraphs by reference.

64. Defendants Raadul Ahed and Hameed Rehmatullah, and those acting in concert with them, used improper threats and pressure — including withholding Plaintiff's access to his own customer portal and account information — to coerce Plaintiff into making additional payments he would not otherwise have made. Plaintiff had no adequate alternative but to submit. Plaintiff is entitled to rescission and restitution of the payments so coerced.

**COUNT NINE**

**Civil Conspiracy**

65. Plaintiff incorporates the preceding paragraphs by reference.

66. Two or more of the Defendants combined to accomplish an unlawful purpose, or a lawful purpose by unlawful means; had a meeting of the minds on the object or course of action; committed one or more unlawful, overt acts; and proximately caused Plaintiff's injury. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Each conspiring Defendant is jointly and severally liable for all acts done by any member of the conspiracy in furtherance of it, including the acts of Defendants Raadul Ahed and Hameed Rehmatullah.

**COUNT TEN**

**Texas Uniform Fraudulent Transfer Act — Tex. Bus. & Com. Code ch. 24**

67. Plaintiff incorporates the preceding paragraphs by reference.

68. Plaintiff is a "creditor" holding a "claim" within the meaning of Tex. Bus. & Com. Code § 24.002. The August 11, 2025 transfer of 100% of the shares of One Homes UK Marketing Limited from Defendant Shaan-E Abbas to Defendant Syed Sajjad Haider was made with actual intent to hinder, delay, or defraud Plaintiff, as evidenced by badges of fraud under § 24.005(b): the

transfer was to an insider; it occurred shortly after the mediation collapsed and after Plaintiff's claim had been asserted; it was of substantially all of the transferor's interest; and, upon information and belief, it was made without receiving reasonably equivalent value. Plaintiff seeks avoidance of the transfer under § 24.008 and a judgment against the transferee for the value of the asset transferred under § 24.009.

**COUNT ELEVEN**

**Alter Ego / Piercing the Corporate Veil**

69. Plaintiff incorporates the preceding paragraphs by reference.

70. The individual Defendants used the entity Defendants as mere instrumentalities and alter egos to perpetrate an actual fraud on Plaintiff primarily for their own direct personal benefit, such that the corporate fiction should be disregarded and the individual Defendants held liable for the entities' obligations. Tex. Bus. Orgs. Code § 21.223(b); *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008). Indicia include common ultimate ownership across the enterprise entities, the commingling of all payments into a single United Kingdom merchant account regardless of the contracting entity, the use of shell developers sharing the same offices, and conflicting registration numbers for the same entity. This count is pleaded together with Count Nine (civil conspiracy) as an alternative basis for holding the individual Defendants liable.

**COUNT TWELVE**

**Breach of Contract — Refund of the $5,000 Islamabad Expression of Interest**

71. Plaintiff incorporates the preceding paragraphs by reference.

72. The Islamabad Expression of Interest (Envelope 3561F9AD) provides on its face that the $5,000 payment is refundable until allocation of a unit or issuance of "The Wishlist." Neither

event occurred, and the document is marked void. Defendants CPIC UK Marketing Ltd, One Homes, and Raadul Ahed breached by failing to refund the $5,000. Plaintiff seeks recovery of the $5,000 plus attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001.

## VIII. DAMAGES

73. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual, out-of-pocket damages of approximately $191,413, consisting of the amounts paid toward the Gwadar reservations, the Amaya Residences transaction, and the Islamabad Expression of Interest, together with pre-judgment interest from the date of Plaintiff's refund demand. Plaintiff further seeks treble damages under 18 U.S.C. § 1964(c) and, in the alternative, under Tex. Bus. & Com. Code § 17.50(b)(1); rescission and statutory damages under the Texas Securities Act; exemplary damages under Tex. Civ. Prac. & Rem. Code ch. 41; and attorneys' fees and costs under the RICO, DTPA, Texas Securities Act, and contract fee-shifting provisions cited above.

## IX. CONDITIONS PRECEDENT

74. All conditions precedent to Plaintiff's recovery have been performed, have occurred, or have been waived or excused. Fed. R. Civ. P. 9(c).

## X. DEMAND FOR JURY TRIAL

75. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amin Lalani respectfully prays that the Court:

a. Enter judgment in Plaintiff's favor on all counts;

b. Award Plaintiff his actual damages of approximately $191,413, in an amount to be proven at trial;

c. Award treble damages under 18 U.S.C. § 1964(c) and, in the alternative, under Tex. Bus. & Com. Code § 17.50(b)(1);

d. Order rescission and restitution, and award statutory damages under the Texas Securities Act;

e. Avoid the fraudulent transfer of the One Homes UK Marketing Limited shares and enter judgment against the transferee under Tex. Bus. & Com. Code §§ 24.008–24.009;

f. Award exemplary damages under Tex. Civ. Prac. & Rem. Code ch. 41;

g. Award pre- and post-judgment interest at the maximum lawful rate;

h. Award Plaintiff his reasonable attorneys' fees and costs of court; and

i. Grant such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**PRASLA LAW FIRM, PLLC**

By: ______________________________

**Zulfiqar N. Prasla**
Attorney-in-Charge
State Bar No. 24065924
S.D. Tex. Bar No. 997749
800 Bonaventure Way, Ste 154
Sugar Land, Texas 77479
Telephone: (713) 955-4045
Email: znp@praslalaw.com

**ATTORNEY FOR PLAINTIFF AMIN LALANI**